Next case, Perez-Fuentes v. Lynch, Mr. Randolph. Good morning, Your Honor. May it please the court. My name is Justin Randolph, and I represent the petitioner Miguel Fuentes-Perez in this case, or Perez-Fuentes. He is requesting that his cancellation of removal case be remanded to the Immigration Court for a new hearing, a new evidentiary hearing, and a new immigration judge to hear the case. The immigration judge in this case made numerous errors. I'd like to discuss the one first that both petitioner and respondent are sort of in the same ballpark about. Mr. Perez-Fuentes submitted seven statements, seven testimonial statements on his own behalf from family members and business colleagues testifying about his length of stay, his good moral character. I don't know. The good moral character is a little hard to square with his activities, isn't it? He does have an arrest record. He does. His only conviction, though, was for public drunkenness. Everything else was dismissed. The issue is that the immigration judge didn't consider these statements. Didn't what? Did not consider these statements at all. You have seven people saying this is a good guy. You have to weigh this. Good moral character is obviously a balancing test. And we're not asking the court to weight it differently. What we're saying is the immigration judge needed to consider this evidence, which was favorable to Mr. Perez-Fuentes, when he made a decision. He did not consider these statements at all. They don't appear in the decision. The immigration judge's decision doesn't discuss them. On the record, he notes that he received some statements in Spanish, and then at the end, at the close of testimony, immediately launches into an oral decision. These seven statements were not considered at all. The respondent's position is we don't know whether they were considered. This court has said that wherever there is no evidence... So would it be such a hardship to him to be sent back to Mexico? He's not complaining that he's a potential victim of the gangs and so on. It isn't an asylum case, Judge. He's not saying that he would suffer hardship. The test is whether his family here would suffer hardship. So his qualifying relative at the time of the hearing was his daughter, Esmeralda. He now has two children. The questions about whether he was able to go to Mexico, first of all, just so the court understands, he proceeded pro se throughout the entire process. The questions about whether he would be able to transfer his business active in here, he started his own fire suppression business, which was apparently pretty successful. He employs people. Whether he could take that and move that to Mexico, or whether he could get hired there and do something else, nobody ever asked those questions. So there's nothing in the record about his ability to go to Mexico and support his American family, support Esmeralda and his other child. We don't know because those things weren't asked. I think the immigration judge presumed because he was a grown man, he could go get a job. But we don't know because it's not in the record. Those questions weren't addressed at all. In fact, with regards to hardship, neither Mr. Perez Fuentes or his partner, Ms. Ochoa, was actually able to say what would happen if he left. They don't know if the immigration judge closed this hearing without knowing whether they would be homeless in a month, whether the property would have to be sold, whether his business would completely collapse. Nobody knows because the judge didn't ask these questions. Mr. Perez Fuentes has to prove three things for cancellation of removal. He has to prove that he's been here for 10 years. The government stipulated that he had met that burden. The immigration judge said he didn't. He has to prove that he has good moral character, which doesn't mean he's a great guy. He doesn't have to prove he's a great guy. He just has to prove that he hasn't committed any offenses or been convicted for any offenses that bar him from good moral character, and that generally he's been integrated in society. He's some benefit to society. Those seven letters talked about that. The judge didn't consider them. And then obviously he has to prove the requisite hardship to the qualifying relative, which at the time of the hearing was Esmeralda. The way you do that is a variety of questions. Can he go back and work? Can he provide for his family here? Is his family sick? Does he have any other way of coming back? Is there a bar for him coming back in the future? We don't know the answers to these questions because the judge did not ask these questions. The record, as the case, I think it's Katia, I think, there's a yawning void in the record because evidence that was presented to the court was not discussed at all. And therefore, the board had no idea if the judge had a solid foundation for this decision or not. And this court has no idea whether the judge or the board, which just dealt with the hardship issue, had a solid foundation for this conclusion or not. And because of this lack of record created below, we're requesting that the case be remanded because the immigration judge appears to have simply decided he was not a fan of Mr. Perez-Fuentes. We're asking that another immigration judge hear his case. We can present all of the relevant evidence. We can make sure that all of these statements are translated because Mr. Perez-Fuentes was never told they needed to be translated in the first place. And when you do, when you're represented by a lawyer, immigration attorneys know, you have to translate everything. Mr. Perez-Fuentes had no idea. He didn't know that he was losing until the end when he said, the judge said, I'm sorry, you were never eligible for this. You don't meet any of the standards at all, which is weird because the government stipulated that he met the 10 years. He had a qualifying relative. So the only arguments would be whether he met the good moral character standard based on some of his arrests, which were not convictions, only one conviction. And whether he showed the hardship. But we never really got a full record to address those things. And that statement and the fact that the judge didn't consider some of the factors that were favorable to Mr. Perez-Fuentes suggests the judge had kind of gotten a gut feeling about this and he denied the case based on that. And it would be a good idea to have a different judge hear the case. And if there are no other questions, I reserve the rest of my time. OK. Thank you, Mr. Randall. Mr. Hildebrand? Good morning, Your Honors. Reagan Hildebrand on behalf of the federal respondent. Your Honors, the immigration judge had a duty to develop the record in petitioner's proceedings statutorily. And he did not breach that obligation. This circuit has few published authority regarding what constitutes a breach of the immigration judge's duty. In the Cursa Coup case, this court found, albeit in the due process context, that an immigration judge violates due process rights of a full and fair opportunity for a petitioner to present his claim if he completely cuts off a line of questioning. The Third Circuit, recently in the Mark case, found that there's no legal error of the statutory duty to develop the record when the immigration judge gives the petitioner an opportunity to find pro bono counsel, when the immigration judge adjourns hearings multiple times, and when he asks petitioner's questions during those hearings to develop his claim. A view of the record in this case supports that the immigration judge did not commit legal error. He did not breach his statutory duty to develop the record in this case. The petitioner was advised on two separate occasions that he had the burden of proof in this case to establish his eligibility for cancellation of removal. The first occurred on September 13, 2011 at his first hearing. This is found on page 83 of the administrative record. The second occurred at May 22nd hearing, 2012, found at page 98 to 100 of the administrative record, where the immigration judge was clear that the petitioner had elements to prove, and he could bring forward both witnesses and documentary evidence to prove his claim. The petitioner had nearly three and a half years to find legal representation in this case. He first sought cancellation removal in November of 2011. His master calendar hearing wasn't until January 28th of 2013. At his very first hearing, the immigration judge noted, and I quote, he was giving the petitioner another copy of legal organizations that would represent him either at little or no cost. What was he convicted of? The petitioner had a number of criminal charges, Your Honor. Most of them were dismissed over time. The one where he was under supervision termed, which was discharged on May 7th, 2007, where he pled guilty to drinking alcohol in a public way. Other criminal charges include domestic battery possession, aggravated assault. Those charges were either discharged or dropped. So the only one would be the public drug possession. What do you mean by discharged? You mean he pleaded guilty and received a diversionary disposition? Um, let me look at the one, Your Honor. The one that only said where discharged, Your Honor, was with the pleading guilty to drinking alcohol. What does it mean when you say discharged? The record isn't clear, Your Honor. This must be some state law reference. If you want to find out what state law, what that term means in state law, all one goes to state law. But I take it you didn't. My apologies, Your Honor. The record is not very clear. You do not find state law in the record. I know. Thank you, Your Honor. Petitioner argues, nonetheless, that the immigration judge erred by not developing his testimony on the hardship grounds. The immigration judge did develop the testimony regarding hardship to the petitioner's qualifying relative. How long ago was his conviction? The public drug condition, Your Honor, was 2007. Well, that's nine years. To clarify on that point, Your Honor, regarding the good moral character standards, that claim is not before this court today. The board only decided the petitioner's eligibility for cancellation or removal based on the hardship standard. It wasn't required to go into the other elements required for cancellation because the eligibility requirements for cancellation are written in the conjunctive. This court is very clear that when the statutory elements are in conjunction, one failure on one is a failure to the entire claim. For that reason, the board solely focused on the hardship standard. So his... So you're saying the good moral character... It's not properly... The good moral character claim, the continuous physical presence claim, are not before this court today. The board did not decide those issues on the merits. It only focused on the hardship claim to the U.S. citizenship daughter. It didn't look to see if the criminal... Well, would he be entitled to a chance to argue these... the good moral character issue? The board was not required to look at it, Your Honor. It's very clear that the requirements... Well, don't they balance these things? The requirements for cancellation or removal are written... Do they have to prove hardship? Is that what you're saying? They have to. They're written in the conjunction, Your Honor. So in order to establish eligibility, they have to show hardship and continuous physical presence and that they have the requisite good moral character. If they fail on one of those elements, they can't establish their eligibility for cancellation or removal. The petitioner was unable to establish, based on his own testimony, that his U.S. citizenship... If he has good moral character but no hardship, he still has to be deported? That's the way the law is written, Your Honor. Why? That the statute is written in the conjunction. It had been written disjunctive, that he had to establish good moral character or hardship or continuous physical presence. The failure of one would not be despised. What made the immigration authorities interested in deporting this guy? That, Your Honor, I don't know. You know, there are 10 or 11 million illegal immigrants living in the United States, basically ignored by the government. So usually when they deport someone, it's because of criminal activity. Whereas he doesn't seem to be a recent criminal. Understood, Your Honor. I really am not privy to the agency's decision. So we don't know anything about why they decided to pick on him rather than one of the other 11 million? Well, I don't think it's a matter of picking on him, Your Honor. The agency does have very clear, under Heckler, prosecutorial discretion to decide to remove an individual from the United States. Look, very few are deported. They're believed to be 10 or 11 million illegal immigrants in the United States, of whom the overwhelming majority are simply ignored by the government. And I'm just curious why they picked on him. He doesn't seem a particularly bad person. He has a prosperous business, you know. I don't understand why they picked on him. That, Your Honor, I can't answer. They haven't explained that. I do know, based on the record of this case before this court, that this case was stayed multiple times for possibly an exercise of prosecutorial discretion on removal. The agency ultimately decided not to give the petitioner that benefit and decided to remove him. The reason why, it's a matter of prosecutorial discretion. Now, is he in custody? As far as I know, he is not in custody. He probably won't leave, right? I couldn't answer his intent.  I think it depends on the individual, Your Honor. They send you an airline ticket, right? It depends on the case. I mean, if looking at the record of this case, I know the petitioner indicated in 2005 he did take voluntary return back to Mexico. So he did voluntary return. Voluntary return, it's a form of voluntary departure where rather than being placed in removal proceedings, the petitioner elects to leave at their expense. So he has displayed willingness in the past to leave the United States, at least in 2005. As to his future intent, I can't provide any testimony on that. That would require speculation on my part as to whether he would leave the United States. But the record is very clear today that the immigration judge did not breach his obligations owed to the petitioner to develop the record. He gave him an opportunity to find counsel. Petitioner had three and a half years to find counsel. He was asked questions about his hardship to his daughter, and he testified if his removal would constitute hardship, if she had health issues, and he said no. The fact that his testimonial evidence does not establish his burden to establish his eligibility doesn't mean that the immigration judge breached his obligation. Now, petitioner today has argued about these letters found in the record. We do know that the immigration judge did consider four of them. As to why he did or did not consider them, the record does not say. However, it is very clear that that claim is not before this court today. The petitioner is arguing the immigration judge engaged in procedural defect by not considering this evidence. Yet he never made that argument to the board in his appeal. The board never had an opportunity to consider that. 1252G in this case in Gaffar is clear that procedural defects must be exhausted. So he cannot bring that claim today for the simple reason he failed to exhaust them. If the court has no further questions. Okay, well, thank you, Mr. Hildebrand. So, Mr. Randolph, do you have anything further? Thank you, Your Honors. Your Honors, thanks again. I would like to correct a couple of things. The seven statements were brought directly to the attention of the Board of Immigration Appeals. In a respondent's brief, they said that two witnesses who Mr. Perez-Fuentes brought with him to testify, who the immigration judge did not call, were not properly in front of this court. Did the immigration judge prevent them from being called? No. My understanding is the immigration judge asked Perez-Fuentes, anybody else you want to call, any other evidence? And he said no. Why would the immigration judge have to call somebody that Perez-Fuentes did not call? Well, he didn't exactly say that. He said, do you have any other witnesses? Mr. Perez-Fuentes said, I have two other people who don't know me as well as these two people. At that point, Mr. Perez-Fuentes had no idea what the immigration judge was thinking, whether there was an issue with the 10-year. That's very common. In fact, judges are discouraged from announcing their thinking before they hear all the evidence. Right. But it's also perfectly normal to ask the parties who you want to call. If you call them, you listen to their testimony. But if the litigant doesn't call somebody, the judge doesn't have any obligation to insist that they take the stand. But that seems to be your argument. The judge had to insist that people who Perez-Fuentes didn't call testify anyway. Where would that obligation come from? Well, I think for pro se litigants, the immigration judge's duty, since this is not regular court, the immigration judge's duty extends beyond what a sitting judge might do. They're not inactive participants. Their job is to develop the record, take testimony, look at evidence. And he doesn't know. And what is going to happen if the judge says, okay, you've got these people. I demand that they testify. And then at the end of the hearing, the judge says, you know, they were really more hurtful to you than they were helpful. And then we're going to have an appeal saying the judge should not have called somebody who Perez-Fuentes didn't want to call. That would be an interesting situation. It would be perfectly normal to hear that claim. And you would have that appeal, right? And that is why I focused on the seven statements that were brought to the attention of the board and submitted by Mr. Perez-Fuentes to the judge, which were not considered. Mr. Perez-Fuentes did say, well, they didn't know me that well. And it kind of makes sense why the immigration judge said, well, all right, fine. But the seven statements were directly on point for the three prongs that he has to show. Can the immigration judge call anybody? Can the immigration judge do that? Yes, he can. The immigration judge has the power to call whoever he'd like. The immigration judge raised an issue of the taxes. I think what you're suggesting is in dealing with a pro se, the immigration judge ought to be, you know, a little looser about it and say, we have these two people in the courtroom you know. I'd like to hear from them, something like that. Yes, he should have said it. Were they in the courtroom, by the way? They don't sit in the courtroom. They sit in the hallway. All the witnesses wait outside of the hallway. Were they there? They were there, yes. They were there. They were ready to go. And, yes, I think in a pro se situation where, you know, when you read the transcript, it seems like this isn't going to be that tough. Bring some hardship evidence. We'll talk about it, and we'll figure it out. And it wasn't until the hearing that he realized he didn't bring enough. One other thing. I know my time is up. Yeah, go ahead. The immigration judge's decision, the Board of Immigration Appeals supplanted or supplemented the immigration judge's decision. They simply said, we're not going to reach these other things because we're reaching hardship. When they supplement a decision, the entire IJ's decision and board decision is properly in front of the court. So everything is on the table at this point. I disagree with Respondent. Okay, well, thank you very much, Mr. Randolph.